UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NORMAN GAINES, : | |
|     *Plaintiff*, : | No. 3:17-cv-1513 (VLB) |
| : | |
| v. : | |
| : | |
| DOCTOR WRIGHT, *et al.*, : | |
|     *Defendants*. : | |

## INITIAL REVIEW ORDER OF AMENDED COMPLAINT

Plaintiff, Norman Gaines, currently confined at MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed the original complaint *pro se* under 42 U.S.C. § 1983, alleging that he was denied adequate medical care. On September 15, 2017, the Court dismissed the complaint without prejudice for failure to state a plausible claim. Plaintiff sought, and was granted, an extension of time to file a motion for reconsideration. Instead of doing so, he has filed a proposed amended complaint. Plaintiff states that the proposed amended complaint is intended to cure the deficiencies identified in the order dismissing the complaint. The Court considers the allegations in the proposed amended complaint and will determine whether the case should be reopened as to the claims against any of the defendants.

In the original complaint, plaintiff named eight defendants: Doctors Wright, Ruiz, Freston, Farinella, John Doe and Naqvi and Nurses Hollie and Jane Doe. Plaintiff list all of these defendants except Nurse Jane Doe in the body of the

proposed amended complaint.

Under 28 U.S.C. § 1915A (2000), the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I. Allegations

On December 8, 2014, while confined at Northern Correctional Institution, Plaintiff injured his right knee. He was taken to the medical unit where Nurse Doe

2

noted the swelling and diagnosed a sprained knee. She gave Plaintiff an ace bandage and ibuprofen. Doc. #11, ¶¶ 12-14. Between December 20, 2014, and January 20, 2015, Plaintiff submitted several requests to the medical unit complaining of swelling and loss of motion in his knee and an inability to support his body weight on the knee. The requests were not answered. *Id.*, ¶ 15.

On February 18, 2015, at Osborn Correctional Institution, Plaintiff's knee gave out, causing him to fall. Dr. Wright examined Plaintiff's knee. Although Plaintiff stated that his knee seemed to be moving in and out of place, Dr. Wright concluded that Plaintiff had a sprain. Dr. Wright recommended strengthening the muscles around the knee but did not prescribe any specific exercises to be performed after the swelling resolved. Plaintiff requested pain medication but Dr. Wright told him that the medical unit did not prescribe medications, such as ibuprofen, that could be purchased in the commissary. *Id.*, ¶¶ 16-19.

Plaintiff began doing stretching and strengthening exercises. On March 1, 2015, Plaintiff's knee again failed causing him to experience severe pain. *Id.*, ¶¶ 20-21. Plaintiff asked a custodial officer to call the medical unit, but the officer told Plaintiff to submit a sick call request. *Id.*, ¶¶ 22-23.

Plaintiff wrote to Dr. Wright that day, asking for an immediate examination because his knee was getting worse. Plaintiff stated that it felt as if he had torn something and was in severe pain. By March 20, 2015, Plaintiff had received no response from Dr. Wright or any medical staff member. Plaintiff's knee was swollen and his leg was stiff. His pain prevented him from walking to the dining

hall, approximately two or three city blocks from the housing unit. *Id.*, ¶¶ 24-25. Plaintiff remained in his cell eating only items he purchased at the commissary. As he was assigned to the top bunk in a cell on the top tier, Plaintiff left his cell only for showers and phone calls. *Id.*, ¶¶ 26-27. Plaintiff asked custodial staff to be moved to the lower tier and a bottom bunk. He was told that there were no empty cells and he did not have a bottom bunk pass. *Id.*, ¶ 28.

Through March and April 2015, Plaintiff's cellmate helped him get into and out of the top bunk and to the showers. His cellmate also assisted Plaintiff on the stairs and picked up Plaintiff's commissary bags. *Id.*, ¶ 29.

On April 1, 2015, Plaintiff's knee gave out as he was coming down from the bunk, causing severe pain. Plaintiff asked a correctional officer to contact the medical unit. The officer told Plaintiff that the medical unit would call him down later in the day, and that he should elevate the knee and stay off his leg. Plaintiff was not called to the medical unit. *Id.*, ¶¶ 30-32.

The following day, the officer again called the medical unit, but Plaintiff was not called down. On April 3, 2015, Plaintiff submitted an administrative remedy complaining that he was left in extreme pain and his complaints were ignored. Plaintiff asked to be permitted to eat in his cell as he could not walk to the dining hall, for an examination and pain medication. He did not receive a response. *Id.*, ¶¶ 35-36.

In June 2015, Plaintiff saw Dr. Wright, who stated that he could not prescribe pain medication that was available from the commissary. Dr. Wright

4

told Plaintiff that he could issue him an "ace bandage like brace" but would not submit a request to the Utilization Review Committee ("URC") for an orthopedic consult because, as Plaintiff had only been suffering for a few months, any request would be denied. Dr. Wright also stated that the URC would not approve an MRI as the procedure was too costly. Plaintiff requested an order that he be housed on the bottom tier in a bottom bunk and be permitted to eat in his cell. Dr. Wright refused to issue such an order. *Id.*, ¶¶ 37-39.

At some time after the examination by Dr. Wright, Plaintiff went to the University of Connecticut Health Center for treatment of a ruptured bicep. His arm was in a cast and sling. While there, Plaintiff was examined by an orthopedist, Dr. Doe, and underwent an x-ray of his right knee. Dr. Doe diagnosed a sprained knee. *Id.*, ¶¶ 41-44.

On July 1, 2016, Plaintiff's knee was swollen and he was in severe pain. Plaintiff wrote to the medical unit complaining that he was experiencing difficulty walking up and down the stairs because his arm was in a sling from the bicep surgery and the knee pain caused him to have to hop up and down the stairs. Plaintiff requested movement to the lower tier, permission to eat in his cell, braces to support his knee, an MRI and pain medication. The request was not answered. Plaintiff alleges that he submitted medical requests at least once per month since he injured his knee and only received two responses. *Id.*, ¶¶ 45-47.

On September 23, 2016, Plaintiff again went to the University of Connecticut Health Center for his bicep injury. While there, he saw Dr. Doe for a

follow-up consultation on his knee. *Id.*, ¶ 48. Dr. Doe asked Plaintiff whether he had ever undergone a knee exam. Plaintiff said no. Dr. Doe asked about the last time Plaintiff's knee gave out. Plaintiff stated that it was a few weeks earlier while he was on the basketball court attempting to rehabilitate his bicep injury. Dr. Doe examined Plaintiff's knee, determined that the knee was unstable and recommended an MRI. He also ordered that Plaintiff wear a hinged knee brace. *Id.*, ¶¶ 49-52.

The URC, comprised of Drs. Ruiz, Freston, Farinella and Naqvi, declined to follow the recommendation. *Id.*, ¶ 53. Following the denial, Plaintiff's knee gave out while he was walking causing swelling and severe pain. *Id.*, ¶ 54.

In October 2016, Plaintiff saw Dr. Wright for a routine check-up for the bicep injury. When Plaintiff questioned him about the lack of response to his many requests, Dr. Wright told Plaintiff that he had not received many of the requests. He also told Plaintiff that the URC denied the MRI for financial reasons. Dr. Wright examined Plaintiff's knee and appealed the URC denial. On November 1, 2016, the URC granted the appeal and approved the MRI. *Id.*, ¶ 58. On November 15, 2016, Plaintiff was taken to the University of Connecticut Health Center for the MRI. The test could not be performed on that date. The MRI was conducted on November 30, 2016. *Id.*, ¶¶ 59, 62.

On December 4, 2016, Plaintiff submitted a request asking about the MRI results and when he would receive the special hinged brace he had been prescribed. Nurse Hollie responded to the request, stating that Plaintiff had an

6

appointment with Dr. Naqvi to discuss the test results and that she would check on the status of the brace. Plaintiff submitted a follow-up request on December 16, 2016. In response, Nurse Hollie stated that Dr. Naqvi submitted a request for an orthopedics consult and that the request had been approved with the visit scheduled for January 1, 2017. *Id.*, ¶¶ 63-68.

On January 9, 2017, Dr. Naqvi stated that he did not know the MRI results, but told Plaintiff that he had been scheduled for an ortho-telemed clinic. Dr. Naqvi stated that he would inquire why Plaintiff had not received or been fitted for the brace. The video clinic occurred in February 2017. Dr. Mazzocca told Plaintiff that the MRI showed a complete tear of his anterior cruciate ligament, or ACL, and meniscus. Plaintiff underwent corrective surgery on March 29, 2017. *Id.*, ¶¶ 69-73.

On May 19, 2017, plaintiff learned that posterior collateral ligaments were damaged. Dr. Doe ordered further reconstruction. On June 28, 2017, the reconstructive surgery was postponed. The surgeon opined that the surgery would do further damage to Plaintiff's knee and ordered an additional six weeks of evaluation. Plaintiff has heard nothing further. *Id.*, ¶¶ 74-76.

## II. Discussion

Plaintiff alleges that the defendants were deliberately indifferent to his serious medical needs in that they denied and delayed access to needed medical care in three ways. First, from December 8, 2014, through September 22, 2016, Drs. Wright, Naqvi and Doe failed to conduct an appropriate examination of his

7

knee despite his numerous complaints of pain, swelling and instability. Second, despite numerous requests submitted to the medical unit, Dr. Naqvi and Nurse Hollie, Plaintiff was not provided the knee brace prescribed by Dr. Doe on September 23, 2016. Third, the URC denied an MRI for financial reasons and not sound medical judgment, thereby delaying access to medical care. Plaintiff also references state law claims of medical malpractice and negligence.

A. <u>Eighth Amendment Claims</u>

The Eighth Amendment forbids deliberate indifference to serious medical needs of prisoners." *Spavone v. N.Y. State Dep't of Corr. Servs.,* 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks omitted). To establish a claim for deliberate indifference to a serious medical need, Plaintiff must allege facts demonstrating two elements. The first element is objective; "the alleged deprivation of adequate medical care must be sufficiently serious." *Id.* (internal quotation marks omitted). Under this objective element, a court must determine first, "whether the prisoner was actually deprived of adequate medical care," and second, "whether the inadequacy in medical care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006). Adequate medical care is reasonable care such that "prison officials who act reasonably cannot be found liable." *Farmer v. Brennan,* 511 U.S. 825, 845 (1994). Plaintiff also must allege facts showing that his medical needs, "either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). "There is no settled, precise metric to guide a court in its

estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has presented "a non-exhaustive list" of factors to consider: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

As the Court previously explained, knee injuries generally have been held insufficient to constitute serious medical needs warranting Eighth Amendment protections. *Guarneri v. Bates,* No. 9:05-CV-444(GLS/DRH), 2008 WL 686809, at *7 (N.D.N.Y. Mar. 10, 2008); *see, e.g., Johnson v. Wright,* 477 F. Supp. 2d 572, 575 (W.D.N.Y .2007) (holding that a prisoner's torn meniscus suffered as result of a basketball injury was not a serious medical need); *Moody v. Pickles,* No. 9:03-CV-850 (DEP), 2006 WL 2645124, at *6 (N.D.N.Y. Sept. 13, 2006) (holding that a "medial meniscal tear, with joint effusion" which did not render plaintiff immobile was not a serious medical need); *Williamson v. Goord,* No. 9:02-CV-521(GLS/GHL), 2006 WL 1977438, at *9, 14, 16 (N.D .N.Y. July 11, 2006) (holding that a prisoner's knee injuries including arthrosis, degenerative joint disease, and partially torn anterior cruciate ligament ("ACL"), did not constitute "death or degeneration, or [constitute the appropriate level of] extreme pain [contemplated by] the law"); *Taylor v. Kurtz,* No. 00-CV-700F, 2004 WL 2414847, at *3 (W.D.N.Y.

9

Oct. 28, 2004) (no "serious injury" where plaintiff suffered re-tear of surgically repaired ACL, tear of lateral meniscus ligament, and moderate to severe degenerative changes in knee); *Culp v. Koenigsmann,* No. 99 Civ. 9557(AJP), 2000 WL 995495, at *4 (S.D.N.Y. July 19, 2000) (no "serious injury" where plaintiff suffered from torn meniscus and knee surgery was delayed for approximately one year).

However, a delay in providing needed medical care can, under some circumstances, constitute deliberate indifference. The Second Circuit has held that a delay in treatment rises to this level where prison officials "ignored a life-threatening and fast-degenerating" condition for three days, *Liscio v. Warren*, 901 F.2d 274, 277 (2d Cir. 1990), or delayed needed major surgery for over two years. *Hathaway v. Coughlin*, 841 F.2d 48, 50-51 (2d Cir. 1988). *But see Demata v. New York State Correctional Dep't of Health Servs.*, 198 F.3d 233 (table), 1999 WL 753142, at *2 (2d Cir. 1999) (affirming grant of summary judgment for defendants on deliberate indifference claim where knee injury occurred in February 1994, MRI and consultative exam performed in September 1994, and surgery performed in March 1997).

The second element is of the deliberate indifference test is subjective; the defendants must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions. *See Salahuddin*, 467 F.3d at 279-80. Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not

cognizable under section 1983. *See id.* Nor does a difference of opinion regarding what constitutes an appropriate response and treatment constitute deliberate indifference. *See Ventura v. Sinha*, 379 F. App'x 1, 2-3 (2d Cir. 2010).

Plaintiff's essential claim is that his surgery was delayed for 28 months after his first injury. Doc. #1, ¶ 53. Because he received treatment, the "sufficiently serious" prong of the objective component of the deliberate indifference standard focuses on the effect of the delay, *i.e*, whether the challenged delay was "sufficiently serious." *Salahuddin*, 467 F.3d at 280.

As noted above, the Second Circuit has found deliberate indifference where a life-threatening, quickly degenerating condition is ignored for a few days, or major surgery is delayed for over two years. Plaintiff's condition is at neither end of this spectrum. A torn ACL is not life threatening or quickly degenerating and its repair is not major surgery. The alleged delay in scheduling the surgery does not rise to the level of egregiousness that the Second Circuit has found cognizable. *See, e.g., Hathaway*, 841 F.2d at 49 (broken surgical pins identified as cause of plaintiff's hip pain in July 1981, but plaintiff not provided corrective surgery until October 1983); *but see, e.g., Espinal v. Coughlin*, No. 98 CIV. 2579(RPP), 2002 WL 10450, at *3-5 (S.D.N.Y. Jan. 3, 2002) (no deliberate indifference for three-year delay in surgery for ruptured ACL while conservative treatment attempted).

The fact that Plaintiff believes that more should have been done to treat his injury does not support a deliberate indifference claim. Plaintiff does not allege

that the delay in scheduling his surgery caused him to suffer any adverse effects, or that the results of the surgery would have been different if it had been performed sooner. *See Demata,* 1999 WL 753142, at *2 (2d Cir. 1999) (affirming grant of summary judgment for defendants on deliberate indifference claim where knee injury occurred in February 1994, MRI and consultative exam performed in September 1994, and surgery performed in March 1997). Plaintiff has added numerous allegations to his amended complaint regarding the lack of attention to his injury by Dr. Wright in particular, damage to his posterior collateral ligaments that was recently discovered, and that he suffers permanent ligament damage. He has not, however, alleged any facts suggesting that the results of the surgery would have been different if it had been performed earlier. The delay alone is insufficient to support a plausible deliberate indifference claim.

Plaintiff also alleges, however, that he was not given pain medication to address his injuries. Thus, the Court also considers whether this denial of treatment can support a claim for deliberate indifference to a serious medical need.

Plaintiff first experienced an issue with his knee in December 2014. He now alleges numerous instances of his knee failing to support his weight and causing him to fall and experience severe pain. Plaintiff alleges various instances where he sought and was not provided medical treatment and many requests that the submitted directly to Dr. Wright seeking treatment that were ignored. These allegations are sufficient to plausibly allege that Plaintiff suffered a serious

medical need from at least 2015 through 2017.

To proceed on his claims, Plaintiff must allege facts satisfying the subjective element of the standard with regard to each defendant. Dr. Doe diagnosed Plaintiff with a sprain in May 2016[1] and then, upon re-examination in September 2016, recommended an immediate MRI. In the original complaint, Plaintiff states that Dr. Wright noted on his consultation form that Plaintiff's injury could have been an MCL tear or a knee sprain. Doc. #1, ¶ 20. That he initially misdiagnosed the knee as a sprain, rather than a tear, is not cognizable under section 1983. The claim against Dr. Doe is dismissed.

Dr. Wright diagnosed Plaintiff as suffering a sprain in February 2015. He prescribed pain medication for two weeks and recommended strengthening exercises but did not identify specific exercises. Through 2015 and half of 2016, Plaintiff submitted requests, many to Dr. Wright directly, complaining of pain, swelling and instability, but received no proper treatment and was specifically told that no treatment would be provided for budgetary reasons. No treatment was provided until September 2016, when Dr. Wright successfully appealed the MRI denial to the URC. As Plaintiff has alleged facts supporting Dr. Wright's subjective awareness of Plaintiff's condition, the Court considers the allegations against Dr. Wright sufficient to proceed on Plaintiff's Eighth Amendment claims

---

[1] Plaintiff does not allege when Dr. Doe first examined him in the amended complaint. In the original complaint, however, he stated that this examination occurred in May 2016.

for deliberate indifference to his pain and knee instability.

Plaintiff alleges that Dr. Naqvi did not meet with him as scheduled, did not know the MRI results when they did meet on January 9, 2017, and did not give Plaintiff any medication at that meeting. Although Dr. Naqvi may not have met with Plaintiff, he did review the MRI results because he scheduled an orthopedic consult. The remaining actions constitute, at most, negligence. The claims against Dr. Naqvi regarding medical treatment are dismissed.

Nurse Hollie responded to Plaintiff's December 2016 request regarding the knee brace and the MRI results. Plaintiff received responses regarding the MRI results, but not the knee brace. Plaintiff also requested the brace from Dr. Naqvi. Failure to comply with prescribed treatment can constitute deliberate indifference to serious medical needs. Based on the allegations of the complaint, the plaintiff has alleged a plausible deliberate indifference claim against Defendants Naqvi and Hollie for failing to provide the prescribed knee brace, without which Plaintiff could reasonably be expected to be, and alleges that he was, unstable and as a result suffered an exacerbation of his knee injury and severe pain.

Drs. Ruiz, Farinella, Freston and Naqvi constitute the URC. The URC initially denied the request for MRI. This decision is a disagreement over treatment which does not constitute deliberate indifference to a serious medical need. *Accord Matos v. Gomprecht,* No. 11-CV-1968(NGG)(JO), 2012 WL 1565615, at *8 (E.D.N.Y. February 14, 2012) (no deliberate indifference where one doctor recommends surgery while a different doctor concludes surgery is not warranted

14

unless more conservative measures such as physical therapy have been proven not effective). Plaintiff's conclusory allegation that he was told that the MRI request was denied initially for budgetary reasons is insufficient to state a deliberate indifference claim. Thus, there is no cognizable claim against the URC members.

B. <u>State Law Claims</u>

Plaintiff also references state law claims for medical negligence and malpractice in his amended complaint. Connecticut law requires that, to bring a claim for medical malpractice against medical professionals, Plaintiff must file with his complaint an opinion letter from a qualified medical professional certifying that there appears to have been medical negligence in the care or treatment of Plaintiff. *Telkamp v. Vitas Healthcare Corp. Atlantic*, No. 3:15-CV-726(JCH), 2016 WL 777906, at *8 (D. Conn. Feb. 29, 2016) (quoting Conn. Gen. Stat, § 51-190a(a)). This requirement applies whenever the defendants are sued in their capacities as medical professionals, the alleged actions were medical in nature and arose from the relationship between a medical professional and patient, and the alleged actions were related to medical diagnosis and treatment and involved the exercise of medical judgment. *Id.* (quoting *Jarmie v. Troncale*, 306 Conn. 578, 588 (2012)).

Plaintiff has not submitted the required certificate. Accordingly, all claims for medical negligence or malpractice are dismissed.

## CONCLUSION

The Clerk is directed to reopen this case. All Eighth Amendment claims relating to the delay in surgery, all claims against Drs. Doe, Freston, Farinella and Ruiz, the Eighth Amendment claims for improper medical treatment and any claims resulting from his membership on the URC against Dr. Naqvi, and the state law claims are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1). The case will proceed on the Eighth Amendment claim against Dr. Wright for deliberate indifference to Plaintiff complaints of pain, and the claim against Nurse Hollie and Dr. Naqvi regarding failure to provide the prescribed knee brace.

The Court enters the following orders.

(1) The Clerk shall verify the current work addresses for defendants Wright, Naqvi and Hollie with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packets containing the amended complaint and this order to those defendants within twenty-one (21) days of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on him in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) The Clerk shall send Plaintiff a copy of this Order.

(3) The defendants shall file their response to the amended complaint, either an answer or motion to dismiss, within sixty (60) days from the date the

**waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.**

**(4)    Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within seven months (210 days) from the date of this order. Discovery requests need not be filed with the court.**

**(5)    All motions for summary judgment shall be filed within eight months (240 days) from the date of this order.**

**(6)    Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.**

**(7)    If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that Plaintiff must notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.**

**(8)    Plaintiff shall utilize the Prisoner Efiling Program when filing**

**documents with the court.**

**SO ORDERED at Hartford, Connecticut, this   19th day of October 2017.**


                                                  /s/
                                    **Hon. Vanessa L. Bryant**
                                    **United States District Judge**