UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NORMAN GAINES, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 3:17-cv-1513 (KAD) |
| | : | |
| WRIGHT, et al., | : | |
| Defendants. | : | |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Preliminary Statement**

The plaintiff, Norman Gaines ("Gaines"), an incarcerated person, in this civil rights action, claims that the defendants were deliberately indifferent to his serious medical needs in violation of his 8th Amendment rights. The extensive and protracted procedural history of the plaintiff's claims need not be recited here. It shall suffice to note that following court review of the Third Amended Complaint, two claims remain: that Dr. Johnny Wright (Dr. Wright) was deliberately indifferent to Gaines' complaints of pain, and that Dr. Naqvi and Nurse Good failed to provide a prescribed knee brace, also a deliberate indifference claim. ECF 90. Each of these defendants has filed a motion for summary judgment to which the plaintiff has objected. For the reasons that follow, the motion is GRANTED as to defendants Dr. Naqvi and Nurse Good and DENIED as to defendant Dr. Wright.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Redd v. New York Div. of Parole*, 678 F.3d 166, 173-74 (2d Cir.

2012). "When the nonmoving party will bear the burden of proof at trial, the moving party can satisfy its burden at summary judgment by 'pointing out to the district court' the absence of a genuine dispute with respect to any essential element of its opponent's case: 'a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Cohane v. National Collegiate Athletic Ass'n*, 612 F. App'x 41, 43 (2d Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "'rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.'" *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (citation omitted). He must present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Facts**

It is undisputed that Gaines first complained about right knee pain in November 2014 when he was incarcerated at Northern Correctional. Nor is there a dispute as to the dates and times on which the plaintiff received medications. Dr. Clements prescribed 600mg of Motrin, a

pain reliever, for the period from December 2014, through March 2015. On February 13, 2015, Gaines was transferred to Osborn Correctional Institution where he was treated by defendant Dr. Wright. On April 17, 2015, Dr. Breton renewed Gaines' Motrin prescription for six months. Gaines was issued twenty pills on that date.

Dr. Wright submitted an affidavit in which he states that Gaines first complained to him of knee pain on August 4, 2015. However, Gaines' affidavit indicates that he saw Dr. Wright in March 2015 and submitted many requests for treatment of knee pain prior to the August 2015 visit. He further states that Dr. Wright failed to respond to his many requests for pain medication. For this reason alone, Dr. Wright's motion for summary judgment must be denied. However, further examination of the submissions is appropriate.

Following his August 4, 2015 appointment with Dr. Wright, Gaines received twenty Motrin tablets on August 5, 2015. Dr. Wright saw Gaines on September 10, 2015, for a follow-up appointment. Dr. Wright reviewed Gaines' knee x-ray and renewed the Motrin order for six months. The medication order is reflected in the medication records submitted by the defendants. However, those records show that Gaines was actually given medication on September 19, 2015 only.

Dr. Wright saw Gaines again on April 20, 2016, for an unrelated injury to his left biceps. Dr. Wright prescribed Flexeril, a muscle relaxer, for seven days and Motrin for thirty days. He also sent Gaines to the emergency room. Gaines acknowledges that he received the Motrin but asserts that it was prescribed for his biceps injury not his knee injury.

Dr. Wright saw Gaines on June 20, 2016. Dr. Wright ordered a "right knee support with donut buttress, which is a type of knee brace with a neoprene sleeve designed to stabilize and

3

control the patella and support the knee joint." Gaines received the brace the same day. Again, Gaines acknowledges these events but avers that this was not a scheduled appointment but rather a chance meeting in the hallway. He further states that Dr. Wright failed to provide any pain medication on June 20, 2016. This is one of several ways in which the plaintiff disagrees with the medical records. While he acknowledges that he was treated on the days indicated, he generally avers that they are incomplete, misleading, and inaccurate in terms of what he reported at the appointments with medical personnel. He avers that he was regularly and consistently complaining of knee pain at just about every medical appointment.

Following surgery on his biceps, Dr. Wright saw Gaines in the infirmary on August 11, 2016. Gaines was prescribed two pain relievers, 325 mg aspirin and Tylenol with codeine. Dr. Wright also issued Gaines a bottom bunk pass for three months. Gaines does not dispute receiving the medications but again argues that they were prescribed for issues relating to his biceps injury, not his knee.

On September 23, 2016, Gaines had a follow-up visit at the University of Connecticut Health Center regarding his surgery. During the visit, Gaines complained about his knee injury. The doctor noted in the record that he would order an MRI of the right knee and recommended a hinged knee brace for stability. On September 27, 2016, Dr. Wright submitted a request to the Utilization Review Committee for an MRI of Gaines' right knee. The request was initially denied. Dr. Wright appealed the denial and the request was granted. The MRI was performed on November 30, 2016. The MRI showed a complete tear of Gaines' right ACL.

Gaines was transferred to MacDougall-Walker Correctional Institution on October 27, 2016. Dr. Wright had no further interaction with Gaines. In addition to the plaintiff's testimony

4

that the records are incomplete or in other instances inaccurate, the records do reflect three distinct time periods during which Gaines received no pain medication or treatment – March 2015 through April 2015; from mid-August 2015 until mid-September 2015, and May 2016 through October 2016.[1]

Following the transfer, Gaines was treated by Dr. Naqvi.  On December 4, 2016, Gaines submitted a request to defendant Nurse Good inquiring about the status of the recommended knee brace.  Nurse Good forwarded Gaines' chart to the doctor with a note indicating that she was unable to order the brace and asking him to order the knee brace if necessary.  An appointment with defendant Dr. Naqvi was scheduled for December 29, 2016.  The appointment was rescheduled for January 9, 2017, as Dr. Naqvi was out of the county between December 21, 2016, and January 1, 2017.

Although Gaines had the knee brace provided by Dr. Wright, he requested the recommended hinged brace.  Dr. Naqvi did not order a new brace because, in his opinion, a stronger brace was not medically necessary at that time.  Gaines underwent surgery to repair his ACL on March 29, 2017.  The same day, he received a new knee brace.

**Discussion**

"The Eighth Amendment forbids deliberate indifference to serious medical needs of prisoners."  *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks and citation omitted).  To establish a claim for deliberate indifference to a serious medical need, the plaintiff must demonstrate that the alleged deprivation of adequate

---

[1] Although it appears that Dr. Wright's September 2015 prescription was not properly administered and there may have been other times during which the plaintiff did not receive medication, the failure of an unnamed and unknown person to follow Dr. Wright's directions does not implicate the question of Dr. Wright's liability.

medical care was sufficiently serious. This is an objective inquiry and requires the court to determine, first, "whether the prisoner was actually deprived of adequate medical care" and, second, "whether the inadequacy in medical care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006). A condition is considered serious if "a reasonable doctor or patient would find [it] important and worthy of comment," the condition "significantly affects an individual's daily activities," or if it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quotation marks omitted).

In addition, the plaintiff must establish that the defendant was actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions. *See Salahuddin*, 467 F.3d at 279-80. This is a subjective inquiry. Mere negligence does not constitute deliberate indifference. *Id.* at 280. Nor does a disagreement over proper treatment or diagnosis create a constitutional claim as long as the treatment was adequate. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Chance*, 143 F.3d at 703; *see also Hathaway v. Coughlin*, 37 F.3d 63, 70 (2d Cir. 1994) ("We do not sit as a medical board of review. Where the dispute concerns not the absence of help but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, we will not second guess the doctors.").

As to the claims against Dr. Wright, as noted, Gaines avers that he suffered severe knee pain and, although he complained about the pain almost constantly, his complaints were ignored and he did not receive medication or treatment for his knee pain. Dr. Wright relies on the medical records which clearly reflect that Dr. Wright and others prescribed several pain medications. However, the records reflect periods of time during which Gaines was receiving no pain medication and during which he claims to have sought same. Additionally, the fact that he

6

may have been receiving medication from a different doctor or for a different condition does not preclude a finding that Dr. Wright was deliberately indifferent to plaintiff's right knee pain.

Dr. Wright also characterizes this claim as a disagreement over treatment arguing that Gaines has no right to stronger pain medication. The Court disagrees. The failure to provide treatment is cognizable under section 1983. *See Estelle*, 429 U.S. at 107-08 (rejecting deliberate indifference claim where plaintiff challenged treatment decisions rather than failure to provide treatment). Further, the Court cannot make credibility determinations on a motion for summary judgment. *See Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) ("'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Given the conflicting evidence, the Court cannot, determine whether, when and how frequently Gaines informed Dr. Wright of his pain issues and whether or to what extent Dr. Wright ignored these complaints. If a jury were to credit Gaines' testimony, Dr. Wright could be found to have been deliberately indifferent to Gaines' complaints of pain. Thus, Dr. Wright's motion for summary judgment is denied.

The court turns next to the motion regarding the claims against Dr. Naqvi and Nurse Good. Gaines avers that Dr. Naqvi and Nurse Good were required to, but did not, provide him the hinged knee brace recommended by the doctor at the University of Connecticut Health Center and that such failure violated his 8th Amendment rights. These defendants contend, *inter alia*, that the recommendation for a hinged knee brace by the doctor at the University of Connecticut Health Center did not obligate them to provide the knee brace. The court agrees with the defendants.

7

Nurse Good filed an affidavit indicating that she was not even authorized to order the hinged knee brace and that her only obligation was to let the doctor know of the UConn doctor's recommendations. Her affidavit is consistent with the documents relied upon by Gaines. The section entitled "Day Following Appointment," in the policy and procedures manual submitted makes specific reference to recommendations made during an inmate's appointment. Therein, the nurse in Nurse Good's position, is directed to document and track the recommendations to ensure that the doctor addresses each recommendation and either orders it or documents a reason for not following the recommendation. Nurse Good further states in her affidavit that she gave the consult notes with the recommendation for a hinged knee brace to the doctor with a note to order the brace if necessary. Thus, she followed the required procedure. The plaintiff has not countered either contention – that she was not authorized to order the brace or that she was limited in terms of her responsibility having received the recommendation.[2] Accordingly, the motion for summary judgment is granted as to the claims against Nurse Good.

Similarly, the records relied upon by Gaines do not establish a material issue of fact as to whether Dr. Naqvi was required to order the hinged knee brace. As noted above, the protocol required Dr. Naqvi to order the brace or explain why he did not do so. Dr. Naqvi states that Gaines had a knee brace and he did not consider a stronger knee brace medically necessary at that time. Dr. Naqvi knew that Gaines was scheduled for knee surgery and would be fitted for a hinged knee brace following surgery. He considered the current brace sufficient for the period before surgery. Dr. Naqvi also stated that he renewed Gaines' bottom bunk pass for six months

---

[2] Plaintiff's reliance upon a different section of the policy and procedures manual to create an issue of fact is unavailing. It is clear that recommendations such as those at issue here, are just that, recommendations. The ultimate responsibility for whether the recommendation should be or will be followed is left to the concerted medical judgment of the Department of Corrections medical personnel.

and ordered that he be permitted to use the handicap showers to address Gaines' instability issues. Although Gaines clearly disagrees with this assessment, he provides no evidence suggesting that Dr. Naqvi's decision was not based on considered medical judgment. The evidence relating to Dr. Naqvi's failure to order the hinged knee brace demonstrates only a disagreement over treatment, which is not cognizable under section 1983. *See Estelle*, 429 U.S. at 107; *Chance*, 143 F.3d at 703. The motion for summary judgment is granted as to claims against Dr. Naqvi.

Lastly, the defendants each claim that their actions are protected by qualified immunity. As the court has granted summary judgment as to the claims against Dr. Naqvi and Nurse Good, it need only consider this argument as to Dr. Wright.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012)). "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)).

An official is entitled to qualified immunity if (1) the facts alleged or shown by the plaintiff state a violation of a statutory or constitutional right by the official and (2) the right was

clearly established at the time of the challenged conduct. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). The district court has the discretion to determine, in light of the particular circumstances surrounding the case, which of the two prongs of the qualified immunity standard to address first. *See Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (quoting *Pearson*, 555 U.S. at 236).

Under the second prong, a right is clearly established if, "at the time of the challenged conduct ... every 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at 731 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). There is no requirement that a case have been decided which is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* "[A] broad general proposition" does not constitute a clearly established right. *Reichle v. Howards*, 566 U.S. 658, 665 (2012). The constitutional right allegedly violated must be established "in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Id.* (quoting *Anderson*, 483 U.S. at 640). Recently, the Supreme Court addressed the issue of qualified immunity and stated that "it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, ––– U.S. –––––, 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742). "As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case." *Id.* (citing *Anderson*, 483 U.S. at 640).

Dr. Wright argues that he is protected by qualified immunity because inmates have no clearly established right to a particular type of medication. While this may be true, the argument stems from an interpretation of Gaines' claim as a disagreement over the amount and type of his

10

pain medication. However, Gaines' claim is reasonably read to be one of a denial of care. As Dr. Wright did not address whether he would be entitled to qualified immunity on a claim for failure to provide any treatment, the defendants' motion is denied as to this ground.

For all of the foregoing reasons, the motion for summary judgment is **GRANTED** as to the claims against Nurse Good and Dr. Naqvi and **DENIED** as to the claim against Dr. Wright.

**SO ORDERED** this 31st day of October, 2018 at Bridgeport, Connecticut.

/s/
Kari A. Dooley
United States District Judge